Dorothy Baruffaldi *vs.* Contributory Retirement Appeal Board.

Middlesex.    March 5, 1958. — May 7, 1958.

Present: Wilkins, C.J., Spalding, Williams, Counihan, & Whittemore, JJ.

*Retirement. Proximate Cause. Statute,* Construction. *Words,* "Personal injury."

The words "personal injury" as used in G. L. c. 32, § 9 (1), inserted by St. 1945, c. 658, § 1, are not the equivalent of the word "accident" in the predecessor of that statute but have the broader meaning given them in the workmen's compensation act and elsewhere in the law. [500]

The facts that in a statutory revision one of the new sections was given the same title as its predecessor, that such new section and its companion sections, "to the fullest extent conformable to the terms thereof, . . . [were to] be construed as a continuation of and amendment of . . . [the preceding law] and not as a new enactment," and that the

predecessor of such new section had been judicially construed, did not control the construction of plain words of such new section materially different from those of its predecessor. [501]

The facts that death by coronary thrombosis of a city engineer resulted from "the impact upon his already diseased heart" of a bitter argument occurring on the morning of the preceding day between him and a contractor at the site of and with respect to the heating of a municipal building which the contractor was constructing under the supervision of the engineer required a conclusion that the engineer "died as the natural and proximate result of a personal injury sustained . . . as a result of, and while in the performance of, his duties at some definite place and at some definite time" within G. L. c. 32, § 9 (1), as appearing in St. 1945, c. 658, § 1, and entitled his widow to death benefits under § 9. [501]

PETITION, filed in the Superior Court on August 29, 1956. The case was heard by *Dewing*, J.

*Robert J. Muldoon*, (*Philibert L. Pellegrini* with him,) for the petitioner.

*Fred W. Fisher*, Assistant Attorney General, for the respondent.

SPALDING, J. This is a petition under G. L. c. 30A, § 14 (the State administrative procedure act), inserted by St. 1954, c. 681, § 1, to review a decision of the contributory retirement appeal board established under G. L. c. 32, § 16 (4), as appearing in St. 1945, c. 658, § 1.

The pertinent facts are these. From January, 1950, until his death on January 1, 1954, Lawrence Baruffaldi was employed by the city of Somerville as city engineer, and was a member of the contributory retirement system of that city. He had a history of heart disease, the disease "becoming progressively more serious in recent years." On March 13, 1953, he was admitted to a hospital from which he was discharged on March 28, 1953. The admission diagnosis was "Coronary artery insufficiency due to arteriosclerosis, old myocardial infarction, congestive heart failure, secondary to the coronary arteriosclerosis." He was again a patient at the same hospital from July 31, 1953, to August 2, 1953, during which period the following "final diagnosis" was made: "Arteriosclerotic heart disease with cardiac enlargement. Normal sinus rhythm, decompensated with coronary

insufficiency. Angina pectoris." For about a year prior to his death Baruffaldi had been under the care of a physician who advised him to avoid "emotional upsets." His last visit to his physician was on December 8, 1953. During the latter part of 1953 his use of medicine far exceeded the amount used in former years.

As city engineer, Baruffaldi had the duty of supervising the construction of a municipal garage with a view to ensuring that the contractor was meeting the specifications of the contract with respect to time, materials, and workmanship. "There were many, almost constant, disagreements, heated disputes, between . . . [Baruffaldi] and the contractor regarding the work which caused . . . [Baruffaldi] to become emotionally upset on repeated occasions." These incidents became "more frequent and intense as the time for a change of administration as a result of the municipal election of November, 1953, drew close." Baruffaldi's term as engineer was to expire on January 4, 1954.

On the morning of December 31, 1953, Baruffaldi became involved in his "final and bitterest argument" with the contractor. The argument related to the heating of the building, Baruffaldi contending that the contract required the contractor to heat the building and the contractor contending the contrary. This dispute was "broken off at the instance of an associate who led . . . [Baruffaldi] by the arm from the scene." Baruffaldi stayed on the job until 4:30 P.M., when he left for home. It appears that he was ill that evening but it does not appear that he sought medical aid at that time.

The next day (New Year's Day) Baruffaldi visited the job and returned to his home in the afternoon. He died that evening about 9 P.M. The cause of death set forth in the death certificate was "Coronary thrombosis (1 day) Coronary insufficiency (3 years)."

The petitioner (Baruffaldi's widow) applied to the Somerville retirement board (hereinafter called the local board) for death benefits under the provisions of G. L. c. 32, § 9.

The local board denied her application and she appealed to the contributory retirement appeal board (hereinafter called the appeal board) under G. L. c. 32, § 16 (4). Following a hearing, the appeal board reached a decision in which, after reciting the facts set forth above, it concluded as follows: "We find that Mr. Baruffaldi's death undoubtedly resulted from the impact upon his already diseased heart, of the argument which took place on the morning of December 31, 1953. We rule, therefore, that under the circumstances of this case his death was not the result of a personal injury sustained within the provisions of § 9 (1) of c. 32 of the General Laws. The decision of the . . . [local board] is affirmed [and the] appeal [is] dismissed."

The petitioner then filed this petition for review in the Superior Court under G. L. c. 30A, § 14. The judge ordered a decree to be entered affirming the decision of the appeal board. From a decree entered accordingly, the petitioner appealed. G. L. c. 30A, § 15.

The rights of the petitioner to death benefits are found in G. L. c. 32, § 9 (1), the material portions of which are: "If the board, upon receipt of proper proof, finds that any member [of the contributory retirement system] in service died as the natural and proximate result of a *personal injury* sustained or a hazard undergone as a result of, and while in the performance of, his duties at some definite place and at some definite time . . . without serious and wilful misconduct on his part, the payments and allowances hereinafter referred to . . . shall be granted to his beneficiary or beneficiaries, in the sum or sums, and upon the terms and conditions, specified in this section . . ." (emphasis supplied).

As stated above, the appeal board found that Baruffaldi died as a result of "the impact upon his already diseased heart, of the argument" which took place on the preceding day and that this argument arose out of the construction of a building which Baruffaldi was supervising as city engineer. Yet, notwithstanding these findings, the appeal board ruled that the petitioner was not entitled to death

benefits under § 9 (1). This ruling can be supported only by holding that Baruffaldi's death was not "the natural and proximate result of a personal injury sustained . . . as a result of, and while in the performance of, his duties . . . ." On the findings of the appeal board there is no basis for concluding that what happened to Baruffaldi did not result from the performance of his duties. And we think that such result can be said to be "natural and proximate." The petitioner does not contend that Baruffaldi's condition resulted from a hazard of his employment. See *Hough* v. *Contributory Retirement Appeal Board*, 309 Mass. 534, 539. Thus the question narrows down to whether the incident causing his death was a "personal injury" within the intendment of the statute.

Clearly under the predecessor of § 9 (1) the petitioner would not be entitled to death benefits in a situation like the present. By G. L. c. 32, § 31B, as appearing in St. 1936, c. 318, § 1, death benefits were payable only in cases where the appropriate board, upon receipt of proper proofs, "shall decide that . . . death was the natural and proximate result of an *accident* or of undergoing a *hazard peculiar to his employment*, at some definite time and place while the member was in actual performance and within the scope of his duty . . ." (emphasis supplied). In *Hough* v. *Contributory Retirement Appeal Board*, 309 Mass. 534, a town clerk sought retirement under G. L. c. 32, § 31, as appearing in St. 1936, c. 318, § 1, by reason of total and permanent incapacity. It appeared that his incapacity resulted from long hours of clerical work over a period of years, culminating in his collapse after attending a lengthy meeting of a town board. In refusing to quash the decision of the appeal board denying retirement, this court, construing language in § 31 which is identical with § 31B quoted above, said at pages 538–540, "Benefits under § 31 are based upon disability due to an accident or hazard peculiar to his employment . . . . The petitioner contends that there is an analogy between the instant case and those arising under the workmen's compensation act where death was caused by an injury to the

heart resulting from overexertion or overwork . . . . But these cases are plainly distinguishable. . . . [T]he workmen's compensation act requires an injury but it does not require a personal injury by accident . . . while under said § 31 retirement allowances are based exclusively upon disability resulting from accident or hazard peculiar to the employment."

It will be noted that the words "accident or . . . hazard peculiar to his employment" do not appear in § 9 (1); these words have been replaced by "personal injury sustained or a hazard undergone" as a result of and in the performance of duty. Section 9 (1) became a part of our law by St. 1945, c. 658, § 1, which extensively revised our retirement laws.[1] The petitioner argues that the substitution of the words "personal injury" for "accident" is significant and evinces a legislative intent to authorize retirement allowances in cases where formerly they were not permitted. It seems to us that this argument has merit. We do not believe that in substituting the words "personal injury" for "accident" the Legislature intended no change in the law. "Words and phrases shall be construed according to the common and approved usage of the language; but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in law shall be construed and understood according to such meaning." G. L. c. 4, § 6, Third. The words "personal injury," whether viewed as words in common use or as technical words which have acquired a peculiar meaning, are not the equivalent of "accident." They are words which elsewhere in our law, and especially in our workmen's compensation act, have acquired a broader meaning, and we are of opinion that they are to be given such meaning in § 9 (1). It was held in *Madden's Case,* 222 Mass. 487, after full discussion, that

---

[1] The act was entitled "An Act to establish a single contributory retirement law for public employees" and was recommended by a special commission established by c. 49 of the Resolves of 1943. See report of the commission in 1945 House Doc. No. 1950, page 10. It amended G. L. c. 32 by striking out §§ 1 to 38A, inclusive, and §§ 68A–68C and substituting twenty-eight sections in place thereof.

the words "personal injury" in the workmen's compensation act were not limited to injuries incurred by accident, and that the aggravation of a preëxisting heart disease by exertion or strain was compensable. Other cases to the same effect are *O'Flaherty's Case*, 325 Mass. 303, and *McMurray's Case*, 331 Mass. 29, 32. Under such a construction Baruffaldi's death resulted from a "personal injury."

We have not overlooked the fact that § 9 has the same title as its predecessor, § 31B, namely, "Accidental Death Benefit." General statements of the scope or purpose of an act in a title may aid construction of doubtful or ambiguous clauses, but cannot control the plain provisions of the enactment. *Milk Control Board* v. *Gosselin's Dairy, Inc.* 301 Mass. 174, 179–180. *Charles I. Hosmer, Inc.* v. *Commonwealth*, 302 Mass. 495, 501. *Flynn* v. *Board of Registration in Optometry*, 320 Mass. 29, 31–32. The words here involved do not impress us as doubtful or ambiguous.

The respondents direct our attention to the provision of St. 1945, c. 658, § 1 (G. L. c. 32, § 2), that "Sections one to twenty-eight inclusive, to the fullest extent conformable to the terms thereof, shall be construed as a continuation of and amendment of sections one to thirty-eight A inclusive . . . and not as a new enactment." We find nothing in this provision which precludes the construction we have placed on § 9 (1). Nor is the board aided by the rule of construction that "'when a statute after having been construed by the courts is reënacted without material change, the Legislature are presumed to have adopted the judicial construction put upon it.'" *Bursey's Case*, 325 Mass. 702, 706. Here it cannot be said that the change was not material.

It follows from the foregoing that the petitioner has brought herself within § 9 (1). The facts established before the appeal board show that her husband while a member of the contributory retirement system "died as the natural and proximate result of a personal injury sustained . . . as a result of, and while in the performance of, his duties at some definite place and at some definite time."

The final decree affirming the decision of the appeal board is reversed and a new decree is to be entered setting aside the decision of that board and ordering a decision to be entered that the petitioner is entitled to the benefits prescribed by § 9.

*So ordered.*